Hello court, I'd like to reconvene the Honorable John Turner presiding. Thank you Mr. Clerk. Good afternoon, please be seated. Okay, this is the last case of the day for the court. This is case number 4150052, Quincy Country Club v. Department of Deployment Security. We have Chris Webb for the appellee, Valerie Quinn. Mr. Webb, please proceed. Good afternoon, justices, counsel. May it please the court. My name is Christopher Webb. I'm an attorney at Schmiedes Camp, Robertson, New and Mitchell in Quincy, Illinois. I represent Quincy Country Club in this case. This case is actually an item where it's easy to get distracted, but my opposing counsel has actually framed the issue quite well. She argues that the hearsay evidence, this is a sworn statement from the victim, in this case a co-employee of the claimant, was admitted into evidence and considered by the administrative law judge. Unfortunately, the plain language of the opinion by the administrative law judge states that the evidence was admitted, but it is not competent, and therefore he could not consider it. Now, this is, I call this hearsay type evidence, because there was no hearsay objection on the record. So, to call this hearsay is a little bit of a stretch, because it's kind of a, if the tree falls in the woods, does it make a sound? It's a statement made in a proceeding not objected to actually hearsay. The standard of review... Well, it would be hearsay, just be admissible hearsay, correct? Correct, and be able to be considered by that, this side of the fact, and by the courts on review. The standard of review on this case, there's basically three options. I think opposing counsel agrees with me on this, that there's de novo, there's clearly erroneous, and there's against manifest way to the evidence. The issue before the court is a question of law. It's whether this type of evidence can support an opinion at the administrative level for employment benefits. Because it is an issue of law, I believe it is afforded de novo review. Essentially, the administrative law judge gave no weight to this evidence. He didn't weight, he said it was incompetent. He says in his opinion that the employer's case was entirely hearsay, and there is no competent evidence of misconduct in the case against the claimant has not been established. Essentially, throughout this sworn statement and the statements of the manager. Are you saying it's wrong for the referee to find evidence not competent? I mean, and then therefore you can say, okay, well, the referee can't be right, because the referee didn't consider this evidence. It just declared it incompetent, and therefore there was error. That seems to be what you're arguing, but it seems like the referee can hear evidence and say, I don't find it to be worthy of being competent as far as influencing my decision. I really think it goes into whether admissible evidence can later, whether evidence can be admitted and then decide to be incompetent. Well, no, maybe the better way to put it, I think the rule of law is pretty clear that hearsay evidence is, that is received without objection, is before the trier of fact to be given its natural probative value in the judgment of the trier of fact. That's correct, Judge. Okay, well, who's the trier of fact there? The trier of fact is the administrative law judge, the referee in this case. Okay, and then the administrative law judge decided that it wasn't worth much. No, his opinion states that he, it was not competent and he couldn't consider it. He couldn't even consider it to support his ruling in the case, and that's the mistake here. He gave it no weight whatsoever. Well, if he had said, I just don't find it persuasive, would that have been okay? I believe it would. I believe at least he did give it some weight. Instead of admitting it and then declaring it incompetent and not considering it, that's where the mistake is. And following up on what Justice Steinman said, if the referee had said, I do not find it credible, that would have been okay. But by use of the term competent, that means that there was an error. Yes. There needed to be some sort of weighing here, and that's what the trier of fact does. And here when he says that. I don't find it useful, it's hearsay. How about that? That could be, at least it would show some sort of weighing there. There's really no consideration of the evidence in his opinion. He states the entire case is hearsay, and he can't consider it. It's not competent evidence. There needed to be some sort of weighing here. Justice, as you pointed out, the rule of law here is that evidence is not admissible under circuit court rules. It's a type relied upon by responsible people in serious affairs. This is that type of evidence. This was a sworn statement used by a circuit judge in an order of protection hearing that the claimant had the notice of and the opportunity to cross-examine. This is reliable evidence. The entire point of not allowing hearsay into these type of proceedings is there's no opportunity to cross-examine. Now, in the order of protection that Bell here, the claimant, received notice of, he had the opportunity to cross-examine this statement and he chose not to. This is codified in the rules of evidence for the Administrative Procedure Act and also in the Starkey case that I have cited in my brief. Also, in the administrative, excuse me, rules of evidence, they note that when hearings can be expedited in the interest of the parties, any part of the evidence may be received in written form. That's another issue that this documentation was in written form and was submitted to the prior fact. Is this case at all affected by the fact that even though it's true the Administrative Law Judge, the referee, heard this discussion and the Administrative Law Judge made the remarks you did, that we in fact have the department itself ultimately as the, quote, prior fact, an interesting thing of fiction, but one nonetheless that has long-time prevalence in the state of Illinois. So that even if the Administrative Law Judge said something like, I can't consider this, the ultimate decision is for the agency and the agency didn't say that in its decision, did it? No, but they affirmed the Administrative Law Judge. Well, but in that context, they might be like this court, reviewing judgments, not reasons. So they might have said, yeah, we agree. You know, the stuff about it's incompetent, well, it might or might not, but in any event, it's just hearsay anyways. We're not persuaded by it, says the director, and it goes along with the recommendation to deny the QCC's complaint. If there was some statement of persuasion, if there was a wane, instead of they affirmed the Administrative Law Judge, finding that it was incompetent. Are they required to come forth with some additional statement? They're not required to. I think it would clear up this question if they did. It's always nicer if they do, but the question is they didn't. So can we – let me be more explicit. Can we attribute – assuming what the ALJ said here was bad, which is a setback, it's a mistake, not exercising his judgment, et cetera. Can we attribute that mistake to the agency itself, Department of Employment and Security, when they agree with the recommendation to give this guy unemployment compensation insurance and to reject QCC's claim that they shouldn't? Yes, you can attribute that to the board with their straight affirmation without clarifying in any way that they did weigh the evidence. Well, if they're not required to provide any clarification, why should we attribute to them the bad reason? Because there was a problem or an unclarity in the lower court in the ALJ, and if they were going to change that opinion or if they wanted to affirm it but on the proper grounds, as I argued, then they should have clarified somehow that they considered all the evidence in the record. Here, the ALJ said, I will not consider Quincy Country Club's case, and then this was affirmed by the Board of Review. This type of evidence – and I'm talking about the manager testifying and saying that an employee brought this situation to me. I talked to the employee. I saw her sworn statement. She mentioned I was with her, victim's advocate. Then I asked the accused employee what happened. That's the type of evidence that these cases should make up. It should be the decider testifying. It puts an entirely unreasonable burden on the employer to have to get eyewitness accounts to all of these hearings. Now, this is a special circumstance because there's more in this case. Bell had the opportunity to cross-examine this statement at an earlier time that he received notice of. I cited and actually rely on the Jackson case, which is the type of situation that these hearings should be. That there is a manager who made the decision. He testified about what other people had told him. You can see in the appellate decision in Jackson that the case was entirely hearsay, that there was no witness to the violation of the rules. In Jackson, I believe the claimant had been drinking on the job and had been caught drinking. The manager said, well, certain people told me they caught her with such and such. They caught her drinking, and that was reliable evidence. Here, in this case, same type of proceedings. That was not followed. Also in Jackson, there was an opportunity to deny the statement. To deny that she had been drinking. In that case, that was a letter to the union. Should not take that opportunity. Similar to here, Bell had the opportunity to deny the statement against him, the sworn statement. He did not take that opportunity either. He only took that opportunity later on in this proceeding. He gave an explanation though, which apparently was accepted. As to why he didn't take the opportunity to deny the accusation. It was, and I disagree with the acceptance of that, but I think I have to stick with that. But when you don't show up for a noticed hearing in the circuit court, you have to face the consequences of those actions. I think saying that I couldn't afford an attorney, and actually the factual record of that is not represented accurately by Bell in those proceedings. He showed up for the first notice of the hearing, and then said I wanted to hire an attorney to give me 30 more days. The judge granted that, and then he didn't show up at the second time. So he showed up, and then said I want more time, and then didn't show up again. So when you fail to show up and contest the allegation against him, essentially that's a like to an admission. Yeah, but like in an order of protection, he probably didn't care to see her again. Well, unfortunately, orders of protection have consequences. I mean, if you have an order of protection against you, and you go to get a FOID card, you can't go and say, well, I didn't fight that order of protection, because I didn't want to be around this person. Well, now your Second Amendment rights are gone, or at least suspended while that order of protection is still in place. And it's kind of the same thing here. You can't go back and say, well, I didn't fight that, or I didn't want to show up to deny those allegations against me, because I want employment benefits. Well, if there was a hearing on whether he could get his FOID card or not, he can't go back and say, well, I didn't fight that, because I didn't want to be around her. In my mind, that argument just simply doesn't work. A couple of the Attorney General's cases cited against me, they're largely circuit court cases where the rules of evidence are applied strictly. There isn't the type of evidence relied upon, reasonably prudent men, the conduct of their affairs. And essentially there's a... Well, or there are cases where there was a hearsay objection on the record. I believe that changes things. And there's no deference to pro se, I guess, claimants in these proceedings. So the Attorney General notes that we can't expect a pro se claimant to make these complicated objections. Well, that's their prerogative. I mean, just like not showing up at the hearing, if they decide not to do that or hire an attorney to represent them to make these objections, they have to live with that consequence. And what has to be weighed before the court is, why did Quincy Country Club not make this girl testify? You know, it's a natural question. And we made the right decision that we had her testimony. It had been a sworn statement. It had been used by a circuit judge to restrict Bell's free movement. And so there was just no need for her to testify and relive this traumatic experience again. There was really no incentive for her to cooperate. She got her order of protection, and then Quincy Country Club made the right decision in dismissing Bell for violation of the sexual harassment policy. This sexual harassment policy states that any employee can be discharged for creating a hostile and intimidating work environment, and that's what was created by Bell in this situation. Essentially, Quincy Country Club made the right move here. If they shouldn't have fired him, as their legal counsel, they opened themselves up to a lot of liability if something did happen. So really, the employer is placed in a very difficult situation here, and they get no support from the unemployment insurance agency on this matter. You know, Quincy Country Club made the right choice in dismissing Bell, and he should be denied his unemployment for violation of the reasonable work rule. If I can briefly speak a little bit more about the Jackson case. As I previously noted, all of the evidence in that case was hearsay. There was no objection on the record. Essentially, we would need to reconcile any opinion against Quincy Country Club, in this case, with Jackson. That's the type of evidence for these cases, and it's the proper avenue for considering this. In closing, Justice, Quincy Country Club's evidence satisfied the Administrative Procedure Act and the Starkey case. The differences between the two, actually, is that the Administrative Procedure Act states that the evidence is admissible, and then the Starkey case states that not only is it admissible, but it can be relied upon in making a decision. And that seems to be kind of the disconnect here that we discussed earlier, that there's somehow admissibility and then competency. And I disagree that there's any sort of difference. Why are we admitting evidence if it's not competent evidence? You know, in my experience at the cert court level, I'm sure your experience as a judge is that incompetent evidence doesn't come in. And so for an administrative law judge to have to make the decision of admissible and then competent or incompetent to support their decision, really doesn't make a whole lot of sense to me. This was, again, unobjected to hearsay, so basically not hearsay. And cases against hearsay are, well, sorry, the use of hearsay evidence is disfavored by the lack of the opportunity to cross-examine. Here is a special circumstance where there was an opportunity to cross-examine and Bell did not take it. Once weighed, we believe that this case will come out in Quincy Country Club's favor. At this time, we just request that the case be remanded to the Board of Review with proper instructions to weigh Quincy Country Club's evidence. Thank you. Thank you. You will have your rebuttal. Thank you.  May it please the Court. The referee did not say that he didn't consider the evidence. He said hearsay, while admissible, is not competent evidence and it alone cannot form the basis for a decision to disqualify a claimant. The Board of Review said, we have reviewed the entire record. We find it adequate. And the referee's decision is supported by the record and the law. They considered everything. The Board is the fact finder here. What was the problem with the affidavit? I'm sorry? What was the problem with the sworn statement? It was hearsay. It was used to prove the truth of the allegations contained therein. It was an out-of-court, out-of-tribunal statement made for that fact. And the referee, the fact finder, simply did not credit it over the live testimony that he also had before him. As opposed to an affidavit just obtained for purposes of this hearing, it was an affidavit that was used in the effort to obtain a Board of Protection. Yes, sir. But that fact does not, the referee still had to make a factual finding of, did Bell commit workplace misconduct? The alleged victim in this case was K.R., who was another QCC employee? Yes, she was, Your Honor. What about Mr. Webb's point that given that K.R. told Mr. Mulherin, the manager, that Bell sexually assaulted her, if they keep him on, why aren't they opening themselves up to a claim of negligent, wouldn't be hiring, but negligent employment, because they've kept this guy on who is a sex offender or a dangerous guy or words to this effect. Let's assume three months later he does it again, she claims, to him, maybe on the grounds of the QCC. Would you like to be plaintiff's attorney in that case? Your Honor, nobody's saying they had to keep him on, but what they're trying to do is block his ability to collect unemployment compensation. That's a very different thing. Well, is it? Yes, it is. Why? They had, nobody's interfering with their decision. They could fire him for any reason, including the fact that, look, there's a protective order in effect, he's got to stay a thousand feet away from her or 25 feet while they're on workplace premises. That's kind of difficult. I don't know how big this place is, but I imagine that's rather difficult. You can fire an at-will employee for any reason. You can only block their benefits if they've committed misconduct. And to the fact finders, the fact finder did not credit the misconduct allegation in this case. An allegation of misconduct does not become more credible simply because the misconduct alleges more serious than the usual allegation of misconduct in an unemployment case. What if he had been charged with rape of KR and having appeared in front of some pansy local judge got released on a recognizance bond? Would that make any difference? But he wasn't charged in this case, Your Honor. I know he wasn't, but, see, that's the whole idea behind hypothetical questions. See, I'm asking you a hypothetical question in which he is charged with rape and the state charges him with this crime and he's back, released, even though it's a class X felony, criminal sexual assault, somehow he gets released and he's going back to work. Well, with a protective order in place, he's got to stay away from her. But that would be no misconduct either? The country club, you know, you can insure, you can go ahead and fire him, but you're going to have to claim unemployment. I guess I'm not really clear on your question, Your Honor. I'm sorry, I'm failing to understand it. I'm sorry. Well, okay, I'll try to be more clear. The criterion to deprive an at-will employee who's been fired of a claim for unemployment compensation is that he engaged in misconduct? Right. The board has to be satisfied by at least a preponderance of the evidence that the claimant committed misconduct. Okay. Well, would charging him with rape constitute misconduct? Is the court asking whether the allegation of misconduct would be more credible if he had actually been charged? Yes, I suppose that's what I'm asking. Let's assume it's all the same, but instead of just the victim now saying it, the state has actually charged him. How about that? The board would still have to find that he committed the misconduct. It's two separate forms. And the fact that someone is charged, you know, we do not have a presumption of guilt of alleged sexual offenses any more than we have a presumption of guilt in our legal system of … Well, what's the take of preponderance, beyond a reasonable doubt, clear and convincing? The board needs to be satisfied by at least a preponderance of the evidence. And, you know, it's not a – the board doesn't look at it in terms of a burden of proof. You know, the claimant has to show at the claims adjudication level that they are eligible. And then the employer has the opportunity to protest that if they wish and to present evidence. So what if K.R. shows up and says, yeah, he did it? At the benefits hearing? Yeah. Okay. They usually conduct it by telephone, just so we're clear on that, so that she wouldn't have had to face her accuser. If she testified, the board might well have found her credible. But she didn't. They had live testimony on the one hand. They had a written statement on the other. And they found the testimony credible. And that was – What was the live testimony? That was Bell. He got on the – he testified. And the referee and ultimately the board found that persuasive. They believed it. How much money is at stake here? What are we talking about? How does it work? What is he paid? You get a reduced amount of whatever your pay would have been. And the employer has to pay it? The employer already pays in. They make contributions. It's kind of a tax. Well, there must be some additional payment or they wouldn't care. You know, it depends, Your Honor. I thought it just made their unemployment insurance go up. Some employers are large enough that they're already paying the maximum amount, and it really doesn't make a difference. That's why sometimes – that's why the board doesn't look at it in terms of the employer having a burden of proof. It's kind of a burden of production. But sometimes employers don't even show up at these proceedings, either because they're really small or because they're so big and they're paying whatever the ultimate rate is that it's just – it's not financially – Going back to my first question, should it trouble this court that clearly Quincy would be liable, I think, for negligent employment of a guy who has sexually assaulted a woman if they kept him on and he did it again, yet that doesn't constitute misconduct under the circumstances of this case or that this alleged sexual assailant is going to be able to get an employment compensation on Quincy's dime? The fact finder did not believe that the misconduct had taken place. And that was a factual issue for the board to resolve. And that is how they came out on this case. Nobody's saying they have to keep him on, but he's eligible for benefits. And that was the board's decision. Going back to Justice Stein's hypothetical where your client was charged, say it was some Class II sex charge, had gone to a grand jury, grand jury returned a true bill, would the board consider the fact there was a probable cause finding? Or is that permissible under your rules? Well, if there were evidence submitted at the referee hearing, at the benefits hearing. So they wouldn't just take notice, I guess, of the fact that a probable cause finding had been made in a court of law and that would be considered some of the evidence. I think the board would consider it, certainly. But, you know, in this case there was a no contact order hearing. Bell didn't attend it. That isn't given preclusive effect. Those are expedited proceedings and the focus is the immediate protection of the petitioner, not the guilt or innocence of the accused, not the protection of society at large. And you can imagine why that should be so. In fact, it was the Wuke case, which we cite in our brief, People v. Wuke. The wife went to court, tried to get a protective order, saying her husband had assaulted her. The court didn't believe her, did not give her her order of protection. But her husband was later prosecuted for domestic violence and he tried to use the circuit court's finding denying her protective order in a preclusive way to keep that issue from being relitigated. No, no, I was already found out. I didn't hit her. And the appellate court said, no, you cannot use it that way. It's a different focus. It's a different proceeding, different interests. Your Honor, Quincy cited to Jackson, and we do argue it here, there was a lot more in front of the referee in that case than simply hearsay. I mean, it is true that in this case the claimant was pro se, did not object to the hearsay evidence. But the referee had, in addition, that the claimant admitted to having a drinking problem for a very long time. She testified that she did not take advantage of her employer's employee assistance program to deal with her alcoholism. Instead, after she was fired, she went into a 28-day rehab program and completed it. She stated that on the day she was terminated, no one caught me drinking, which is not exactly a full-fledged denial of her misconduct. And she admitted that she had been caught previously drinking a beer with her lunch and that her employer had warned her about that conduct. So, yes, she denied the specific misconduct that got her fired. But there was a lot more than hearsay in front of the referee in that case. So it really is not a good analogy to this one at all. And the Supreme Court explained that it was the referee's prerogative to give the evidence, whatever weight he thought it should be given. That was the board's view as well. Now, hearsay testimony standing alone is usually not sufficient to support finding a misconduct, though it can. If the plaintiff didn't participate in the hearing at all and the employer offered hearsay, one could well imagine a case where misconduct didn't happen. And, Your Honor, with regard to collateral estoppel, I sort of touched on it a little bit with the preclusive effect, but it is the board's position that the admission argument and the collateral estoppel argument were forfeited because they were not reasonable for the agency to raise for the first time on appeal. Of course, that is an admonition on the parties, not a limitation on the court. If the court has questions about any cases we cite, I'd be glad to answer them. Otherwise, the board... I see no questions, so... I'm sorry, Your Honor. I'm sorry, I thought you were done. No, I was going to say, for the balance of everything, we would stand on the arguments in our brief, as is stated here today, and urge the court to affirm the board's decision. Okay, very well. Thank you. Any rebuttal? Yes, Your Honor. Before you begin, I've got a question. Did the victim of this assault extend the order of protection for three years? Yes, she did. And that was, I believe, found after Bell was noticed and showed up and then did not show up the second time. Briefly, I want to point out that with unemployment claims, the premium does go up, and that's the consequence to the employer here. Quincy Country Club is a relatively small employer, and I believe not at the level where it cannot rise anymore. Their premium did go up as a result of this claim. Also, I wanted to note that... Would you say that that basically is the detriment when an employer loses on a claim that their premium goes up or at least may go up? It is. That's the financial detriment. Is there anything else other than that? No, there's not. Okay. That's it. Other certain... A mentor of mine warned me about going in front of the appellate court with policy arguments, but making these co-employees testify and relive this account is not something that employers should be forced to do. In my mind, that's the detriment as well. They have to line up all of these eyewitnesses. They have to get them all ready to appear by telephone. How many eyewitnesses would there have been? There was only one, but there's certainly other circumstances where there would be more. I can imagine... I find the facts a little bit confusing on that. I thought there were two persons that went over to her house, one being Bell and another person. What happened to that person? Why wasn't that person an eyewitness? He stayed out in the car or what? Yeah, I believe he stayed out in the car. I think even, I don't know if it was Bell that said it, because he would be the only one testifying about that person. I don't know whether on the record if KR even had noticed or any idea that that person was there. So we don't know who that person is. I don't think Bell identifies them by name. And we didn't see the need to conduct any sort of further investigation into that. I mean, essentially it's a... How long was Bell allegedly in her apartment when this assault was taking place? The only time frame stated is by him, and I believe he says 15 to 20 minutes, which in my mind is, you know, looking on a reasonable standard, that's enough time to commit the acts that KR alleges that he committed. I agree with counsel that the criminal forum is a whole different avenue, that we can't look into prosecutorial discretion or whether charges were filed or anything like that, much like we can't look at whether KR would have been charged with perjury. You know, he wasn't charged and she wasn't charged with perjury for submitting her sworn statement that later Bell denies. Essentially, you know, on the issue of misconduct, the same issue was before an Adams County judge, actually two separate Adams County judges, there was a different one on the initial and then the plenary no-contact order, and they found sufficient evidence based on her statement that they could restrict Bell's free movement in no-contact order. At a plenary hearing when the other side doesn't show up, is there usually testimony taken or is it automatic? It is automatic on that case. So there were sufficient facts... It always used to be the same. Right, and it is the same way over in Adams. But I think it would be a whole different proceeding if the other party, I guess the respondent, showed up and contested it. It would be a final fact on the record. Also, I wanted to note that it is the claimant's burden in these cases. So here Bell had the burden of establishing that he qualifies for benefits. So it's not even a 50-50, he's got to go above 50, and we have to go above 50 to prove he had misconduct. Yeah, but what's our standard of review? Your standard of review, well, on issues of law or de novo, on issues of fact against manifestoing the evidence. Who judges credibility, the referee or the department? The referee does. I think the department essentially reading a transcript. The referee is by telephone. We're reviewing the department's decision, though, and it's the fiction I mentioned earlier that it's the department that is the trier of fact for our purposes. Yes, that's correct, which they don't have. They're doing the exact same as reading a sworn statement. They're reading a cold record. So that's the case. But it's not de novo review, counsel. Well, on the issue of whether this type of evidence is competent to support a finding of the administrative law judge, that's an issue of law entitled to de novo review. Now, the ultimate issue is against manifestoing the evidence. Okay. Thanks to both of you. The case is submitted. The court stands in recess until further call.